No. 25-40475

_____

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

MICHAEL RAMIREZ,

Plaintiff – Appellant,

v.

CITY OF TEXAS CITY,

Defendant – Appellee.

_____

On Appeal from the United States District Court
for the Southern District of Texas
Honorable Jeffrey Vincent Brown, District Judge

_____

**APPELLANT'S OPENING BRIEF**

_____

SAVANNAH LINA ROBINSON
1822 Main Street
Danbury, TX 77534-0000
Telephone: (979) 922-8825
savannahrobinson@aol.com

J. DAVID BREEMER
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
JBreemer@pacificlegal.org

*Attorneys for Plaintiff – Appellant*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff – Appellant | Defendant – Appellee |
|---|---|
| Michael Ramirez | City of Texas City |
| **Counsel for Plaintiff – Appellant** | **Counsel for Defendant – Appellee** |
| J. David Breemer of Pacific Legal Foundation<br>Savannah Lina Robinson | Kyle L. Dickson of Murray Lobb, P.L.L.C. |

/s/ J. David Breemer
J. DAVID BREEMER

i

# REQUEST FOR ORAL ARGUMENT

This appeal involves important issues related to the right to a jury trial, whether a court can deny compensatory damages for a deprivation of property without due process based on Fifth Amendment and Fourth Amendment principles, and whether it is proper to hold that a due process victor is not a "prevailing party" for attorneys' fees purposes because the court (wrongly) awarded only nominal damages. Appellant accordingly respectfully requests oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................... i

REQUEST FOR ORAL ARGUMENT ...................................................... ii

TABLE OF AUTHORITIES ................................................................... v

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF ISSUES ................................................................... 1

INTRODUCTION ............................................................................... 2

STATEMENT OF THE CASE ............................................................... 4

SUMMARY OF ARGUMENT ............................................................... 13

ARGUMENT ..................................................................................... 16

I.   The Court Erred in Denying Ramirez a Jury Trial That Would Have Included the Issue of Damages ............................... 16

   A.  The Federal Rules related to a jury demand ......................... 16

   B.  Ramirez properly made a demand for a jury trial within 14 days of removal ................................................................. 18

   C.  If Ramirez did not properly demand a jury trial after removal, the court erred in denying his Rule 39(b) motion for such a trial ......................................................... 20

II.  The District Court Erred in Denying Compensatory Damages ..................................................................................... 24

   A.  The "nuisance" exception to takings liability does not apply to procedural due process claims ................................ 25

   B.  The court erred in concluding that a Fourth Amendment "privacy interest" test bars Ramirez's claim for damages for the loss of personal property ............................... 31

III.  The District Court Erred in Holding That Ramirez Is Not a "Prevailing Party" for Purposes of Attorneys' Fees .................. 34

CONCLUSION .................................................................................. 36

CERTIFICATE OF SERVICE...............................................................37

CERTIFICATE OF COMPLIANCE....................................................38

# TABLE OF AUTHORITIES

## Cases

*Adams v. Ford Motor Credit Co.*,
556 F.2d 737 (5th Cir. 1977)..............................................................22

*Archbold-Garrett v. New Orleans City*,
893 F.3d 318 (5th Cir. 2018)..........................................................2, 29

*Archer v. Gipson*,
108 F. Supp. 3d 895 (E.D. Cal. 2015) ...............................................34

*Archer v. Gipson*, No. 1:12-CV-00261,
2015 WL 9473409 (E.D. Cal. Dec. 28, 2015) .....................................34

*Bowlby v. City of Aberdeen*,
681 F.3d 215 (5th Cir. 2012)........................................................27-29

*Carey v. Piphus*,
435 U.S. 247 (1978)......................................................................27-28

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999).............................................................................19

*Curtis v. Loether*,
415 U.S. 189 (1974)........................................................................18-19

*Daniel Int'l Corp. v. Fischbach & Moore, Inc.*,
916 F.2d 1061 (5th Cir. 1990).................................................14, 21-22

*Dimick v. Schiedt*,
293 U.S. 474 (1935)............................................................................20

*Ellis v. City of Montgomery*,
460 F. Supp. 2d 1301 (M.D. Ala. 2006)...........................14-15, 30-31

*Elsmere Park Club, L.P. v. Town of Elsmere*,
542 F.3d 412 (3d Cir. 2008) ..............................................................27

*Feltner v. Columbia Pictures Television, Inc.*,
523 U.S. 340 (1998)............................................................................19

*Freeman v. City of Dallas*,
186 F.3d 601 (5th Cir. 1999)..............................................................33

*Freeman v. City of Dallas,*
  242 F.3d 642 (5th Cir. 2001)......................................................32-33

*Fuentes v. Shevin,*
  407 U.S. 67 (1972)...................................................................27, 32

*Grayden v. Rhodes,*
  345 F.3d 1225 (11th Cir. 2003)........................................................29

*Grisham v. City of Fort Worth,*
  837 F.3d 564 (5th Cir. 2016)................................................ 4, 16, 35

*Hampton Co. Nat'l Sur., LLC v. Tunica County,*
  543 F.3d 221 (5th Cir. 2008)...........................................................32

*Heidorf v. Town of Northumberland,*
  985 F. Supp. 250 (N.D.N.Y. 1997) .............................................25-26, 30

*Hignell-Stark v. City of New Orleans,*
  46 F.4th 317 (5th Cir. 2022) .......................................................26-28

*Katz v. United States,*
  389 U.S. 347 (1967)........................................................................31

*Kinnison v. City of San Antonio,*
  480 Fed. App'x 271 (5th Cir. 2012).................................................2, 14

*Lewis v. Thigpen,*
  767 F.2d 252 (5th Cir. 1985)...........................................................14

*Lucas v. South Carolina Coastal Council,*
  505 U.S. 1003 (1992)...................................................................26, 29

*Mathews v. Eldridge,*
  424 U.S. 319 (1976)........................................................................32

*McIntosh v. City of Madisonville,*
  126 F.4th 1141 (6th Cir. 2025) .....................................................29-30

*Mertens v. Hewitt Assocs.,*
  508 U.S. 248 (1993).......................................................................18

*New Jersey v. T.L.O.,*
  469 U.S. 325 (1985).....................................................................31, 33

*Parsons v. Bedford,*
  28 U.S. (3 Pet.) 433 (1830)..........................................................16-17

vi

*Pinemont Bank v. Belk*,
 722 F.2d 232 (5th Cir. 1984)...........................................................23

*Price v. City of Junction*,
 711 F.2d 582 (5th Cir. 1983)...........................................................29

*Propert v. District of Columbia*,
 948 F.2d 1327 (D.C. Cir. 1991)........................................................34

*Reid v. Covert*,
 354 U.S. 1 (1957)............................................................................16

*Rhodes v. Guiberson Oil Tools*,
 82 F.3d 615 (5th Cir. 1996)............................................................24

*Rhone v. City of Tex. City*, No. 3:21-CV-74,
 2022 WL 3453351 (S.D. Tex. July 18, 2022),
 *aff'd*, 111 F.4th 680 (5th Cir. 2024) ................................................25

*Richardson v. Henry*,
 902 F.2d 414 (5th Cir.), *cert. denied*, 498 U.S. 901 (1990) ................17

*SEC v. Jarkesy*,
 603 U.S. 109 (2024).................................................................. 18, 20

*Shelton v. Louisiana*,
 919 F.3d 325 (5th Cir. 2019)..........................................................35

*Stotter v. Univ. of Texas at San Antonio*,
 508 F.3d 812 (5th Cir. 2007)......................................................33-34

*Swofford v. B & W, Inc.*,
 336 F.2d 406 (5th Cir. 1964)............................................ 14, 21, 23-24

*United States v. James Daniel Good Real Prop.*,
 510 U.S. 43 (1993)........................................................................27

*United States v. Unum, Inc.*,
 658 F.2d 300 (5th Cir. 1981)..........................................................21

*Vulcan Materials Co. v. City of Tehuacana*,
 369 F.3d 882 (5th Cir. 2004).........................................................22

*White v. Goodyear Tire*, Nos. 95-20417, 95-20754,
 1996 WL 512054 (5th Cir. Aug. 26, 1996).........................................21

## Statutes

28 U.S.C. § 1292(a)(1)..............................................................................1

28 U.S.C. § 1441 ......................................................................................1

42 U.S.C. § 1983 ......................................................................................1

## Rules

Fed. R. Civ. P. 38(b)..........................................................................17-18

Fed. R. Civ. P. 39(b)............................................................17-18, 20-24

Fed. R. Civ. P. 81.....................................................................................13

Fed. R. Civ. P. 81(c)(3)(B)....................................................................17

Tex. R. Civ. P. 216(a)...............................................................................9

## STATEMENT OF JURISDICTION

This case was filed in Texas state court pursuant to 42 U.S.C. § 1983. Defendant timely removed the case to the U.S. District Court for the Southern District of Texas under 28 U.S.C. § 1441. The district court issued a final judgment disposing of all claims on July 18, 2025. ROA.1928. An appeal was timely filed on August 6, 2025. ROA.1931. This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUES

1.      Whether the district court erred in denying Ramirez a jury trial, including on the issue of damages, where Ramirez served a request for a jury five days after removal of the case, his subsequent pleadings continued to request a jury, the court initially set a jury trial date, the issues were appropriate for a jury, and the City would not have been prejudiced by a jury trial?

2.      Whether the court erred in applying inapposite Fifth and Fourth Amendment tests to deny Ramirez compensatory damages for the demolition of a valuable house, and for the loss of $15,000 worth of personal property inside the home, in violation of due process?

3.    Whether the district court erred in concluding that Ramirez was not entitled to reasonable attorneys' fees as a "prevailing party" under 42 U.S.C. § 1988?

**INTRODUCTION**

This case is another in a line of cases in which a local government within the Fifth Circuit's jurisdiction has destroyed valuable property interests without complying with basic due process requirements. *See, e.g.*, *Kinnison v. City of San Antonio*, 480 Fed. App'x 271 (5th Cir. 2012); *Archbold-Garrett v. New Orleans City*, 893 F.3d 318 (5th Cir. 2018). In this case, the district court held that the City of Texas City (City) demolished Appellant Michael Ramirez's (Ramirez) fire-damaged home (the Property) without providing proper notice and an opportunity to be heard. The court thus granted summary judgment to Ramirez on his claim that the City violated his Fourteenth Amendment right to due process in violation of 42 U.S.C. § 1983. The City did not (cross) appeal that ruling, and it is now law of the case.

While the court below ruled that the City destroyed Ramirez's property without due process, it found that Ramirez was not entitled to compensatory damages and awarded only nominal damages. The court

2

denied compensatory damages after first denying Ramirez's request and motion for a jury trial, which would have addressed the issue of damages, and then concluding that Fifth Amendment "takings" law and Fourth Amendment principles barred Ramirez from obtaining compensatory damages for destruction of this property without due process. While Ramirez proved his house was worth approximately $167,000 when it was destroyed, and that the personal property inside was worth $15,000, ROA.2080, ROA. 2088, the court awarded him one dollar. Finally, based on its conclusion that Ramirez was only entitled to nominal damages, the district court held that Ramirez was not a "prevailing party" for purposes of an award of attorneys' fees under 42 U.S.C. § 1988.

The district court's conclusions are erroneous and must be reversed because the court wrongly denied Ramirez a jury trial that would have addressed the issue of damages. Moreover, even setting aside the denial of a jury trial, the court erred in denying Ramirez compensatory damages based on the application of inapposite Fifth Amendment "takings" and Fourth Amendment tests that have no bearing on Ramirez's right to damages for a violation of his procedural due process rights. The Court should accordingly reverse and remand the decision below for a jury trial

3

on the issues or, alternatively, find that Ramirez is entitled to compensatory damages and remand the case for the district court to award those damages.

Finally, since the court's decision to award only nominal damages was incorrect, either because it should have granted a jury trial and/or because it applied incorrect legal standards, its decision to deny Ramirez "prevailing party" status for purposes of attorney fees under 42 U.S.C. § 1988 is also incorrect and should be vacated. *Grisham v. City of Fort Worth*, 837 F.3d 564 (5th Cir. 2016) (concluding that a district court erred in not awarding attorneys' fees on the ground that the plaintiff had only obtained nominal damages for a violation of a constitutional right).

## STATEMENT OF THE CASE

### The Property and the fire

Micheal Ramirez is a construction worker. ROA.2065:24-25. A number of years ago, Ramierz began purchasing homes in Texas City for the purpose of remodeling and reselling them. ROA.2066. For instance, Ramirez bought a house on 19th Avenue North, directly across from the Property at issue in this case, for approximately $100,000. He invested

4

$40,000 in improvements to that property and then sold it for $235,000, earning a $90,000 profit. ROA.2067.

Ramirez then took out a loan to purchase a 2,164-square-foot home located across the street at 13 19th Avenue, ROA.2089:13, for $90,000. He planned to invest $35,000 of his savings on renovations to the home and then sell the Property for $230,000, about the same price he earned after renovating the property across the street. ROA.2068-ROA.2069.

Ramirez soon began renovation work on the 13 19th Avenue property. ROA.2074. Unfortunately, a fire broke out at the Property after Ramirez had finished much of the renovation work on the Property, and just before he was scheduled to meet with a potential buyer. ROA.2074.

The fire was extinguished, but not before parts of the home were damaged. The fire damaged a small portion of the roof, some windows and doors, siding and paneling, and electrical wiring. While this fire damage may have appeared extensive to some, the damage was largely non-structural. ROA.1968-ROA.1969;ROA.1962:1-2. The fire only damaged between 10 and 16.4 percent of the house, ROA.1965:4; ROA.2084, though some additional water damage occurred when the fire was put out. The foundation was unharmed, ROA.1973, the plumbing

5

system was fine, and the home was not in danger of collapse. ROA.1975:25. Ramirez promptly boarded up the windows and doors, and covered the damaged roof area. All of the damage was repairable. ROA.1968-ROA.1969. After the fire, the home still had a value of $167,740.20. ROA.2088.

On April 13th, 2022, three days after the fire, the City sent Ramirez a "Notice of Substandard Structure and of Abatement." ROA.155-ROA.156. The notice stated that the City had determined that the Property was "substandard" and presented a "clear and imminent danger to the life, safety or property of any person and will be abated without further notice." No opportunity for a hearing was offered.

**Post-fire repair and permitting activity**

After the fire, Ramirez estimated that repairing the Property would cost between $50,000 to $60,000. ROA.2088. Despite this expense, he believed that repairing the Property was worth it because he would still make a profit of around $40,000 after spending the money to restore the Property and then selling it. ROA.2096:15. Ramirez accordingly began to plan for repairs. He hired an architect, Micheal Gaertner (Gaertner), who

was experienced with fire restoration and permitting processes to help him develop a plan and to secure City permits.

Gaertner began communicating with City officials and particularly, with the City Attorney, Mr. Dickson, about obtaining permits to repair the Property. ROA.1980-ROA.1981. Through Gaertner, Ramirez submitted plans for the renovation for the home. Although neither the City code nor normal practice requires a property owner to retain an engineer before securing a permit and commencing repairs (engineers are usually brought in during or after repair work), ROA.1986; ROA.2101:10-19, the City Attorney told Gaertner that Ramirez needed to submit an engineer's report before the City would approve a permit. Gaertner then spoke to the City's Chief Inspector, who contradicted the City Attorney, saying that he did not believe an engineer's report was necessary, but that he would get back to Gaertner on the issue. ROA.2004:12-15. He never did. As permitting progress stalled, the City Attorney told Gaertner, "The building will not be demolished unless I approve its demolition; and if that's going to happen, I'll let you know." ROA.1980-ROA.1981.

While waiting to begin repairs, Ramirez acquired and stored valuable appliances and materials at the home. This included a water heater, a refrigerator, washers, two new toilets, power tools, and several brand new doors. The value of this material was about $15,000. ROA.2080-ROA.2081.

On May 9th, 2023, the City demolished Ramirez's house. The City provided no notice to Ramirez other than the outdated, bare-bones April 13, 2022, notice, and it offered him no opportunity to be heard before demolishing the house. The entire structure, including everything in the house, was destroyed. Indeed, the City demolished many vital areas that the fire had left unharmed, including the home's foundation and plumbing systems.

**Prior procedure**

On October 12, 2023, Ramirez sued the City in Texas District Court, 56th Judicial District, Galveston County, alleging in part that the City had deprived him of property without due process of law, in violation of the Texas Constitution, the United States Constitution, and 42 U.S.C. § 1983. Ramirez's Petition sought damages, including the "value of the Property" and the "value of the contents." ROA.9. It also sought

attorneys' fees under 42 U.S.C. § 1988. *Id.* Ramirez did not include a jury demand with his state court Petition because Texas law does not require a plaintiff to make such a demand in the first pleading. Tex. R. Civ. P. 216(a).

On October 26, 2023, the City removed Ramirez's Petition to the Federal District Court for the Southern District of Texas based on federal question jurisdiction. Five (5) days later, Ramirez filed his first document in federal district court, a Certificate of Interested Parties. The caption to that single-page document stated, in all capital letters, "JURY REQUESTED." ROA.34.

On January 12, 2024, Ramirez filed his first motion for partial summary judgment. ROA.45. The caption to this motion stated, in all capital letters, "JURY REQUESTED." ROA.45. On February 5, 2024, Ramirez filed his reply in support of the motion for partial summary judgment. ROA.184. The caption to the reply stated, in all capital letters, "JURY REQUESTED." ROA.184.

The parties subsequently engaged in discovery and, soon after, filed cross-motions for summary judgment. Ramirez filed his second motion for partial summary judgment on October 24, 2024, arguing that he was

entitled to judgment as a matter of law on his state and federal due process claims. ROA.842. The caption to this motion stated, in all capital letters, "JURY REQUESTED." ROA.842. On February 6, 2025, while the parties' cross-motions for summary judgement were pending, Ramirez filed "Proposed Jury Instructions." ROA.1560.

On February 18, 2025, the court set a jury trial date. An entry was issued on the court's case docket which stated: "NOTICE of Setting. *Parties notified. Jury Trial* set for 4/7/2025 at 09:00 AM in Sixth Floor Courtroom Galveston before Judge Jeffrey V Brown, filed." ROA.1568 (emphasis added).

A week later, on February 25, 2025, the district court issued an order denying the City's motion for summary judgment and granting Ramirez's cross-motion in part. The court concluded that the City had failed to provide Ramirez with constitutionally adequate notice prior to demolishing his house. ROA.1578. The court held that "summary judgment is warranted on the issue of whether the city violated Ramirez's due-process rights." ROA.1579. The court further held that triable issues remained, including whether the Property was a "clear and imminent danger." ROA.1579-ROA.1580. The court's order also raised an

10

additional issue for trial as to the amount of compensatory damages to which Ramirez was entitled.

On April 1, 2025, the court scheduled a status conference to discuss the question of whether the trial of the remaining issues would be before a jury or by bench trial. ROA.1609. The parties subsequently filed briefs on the question. The City argued that Ramirez failed to promptly and properly make a jury demand after removal and, therefore, a bench trial was warranted. Ramirez argued in part that his jury request five days after removal sufficed as a demand sufficient to secure his right to a jury. Alternatively, Ramirez moved the court to use its discretion under Federal Rule of Civil Procedure 39(b) to grant a jury trial. ROA.1625.

On April 8, 2024, the court held a hearing on the issue, during which it denied a jury trial and held that the issues would be resolved by a bench trial. Transcript of April 8, 2025, Hearing on Status and Pretrial, ROA.1942. The court subsequently held a one-day bench trial on April 14, 2024. During and after trial, Ramirez sought damages for the previously established violation of his due process rights. ROA.1901-ROA.1911.

On July 18, 2025, the court filed its "findings of fact and conclusions of law." ROA.1913. The court's order found that the Property was not an

11

imminent danger to life or property, but was a "nuisance." ROA.1927. The court further concluded that Ramirez was not entitled to compensatory relief for the value of the home because he found that Fifth Amendment takings precedent bars just compensation for government damage to nuisance properties. ROA.1920-ROA.1921. As to whether Ramirez was entitled to compensatory damages for the value of the materials inside the home, the court concluded that Ramirez did not have a "privacy interest" in the materials justifying an award of damages. As a result, the court held that Ramirez was only entitled to $1.00 in nominal damages. ROA.1921-ROA.1924.

Finally, the court addressed Ramirez's request for attorneys' fees pursuant to 42 U.S.C. § 1988 for successfully establishing that the City violated Ramirez's due process rights. The district court held that Ramirez was not a "prevailing party" entitled to fees under 42 U.S.C. § 1988 because he had not obtained compensatory damages for the violation of his due process rights. It therefore denied Ramirez's request for attorneys' fees. ROA.1924-ROA.1926.

## SUMMARY OF ARGUMENT

Ramirez established that the City demolished his house, and the valuable equipment stored inside, without proper notice or an opportunity to be heard, thereby depriving him of property in violation of the Due Process Clause. He also established that the house had considerable value—over $167,000—prior to demolition, and that the appliances and equipment inside the unconstitutionally destroyed house were worth $15,000. ROA.280, ROA. 288. Nevertheless, the district court denied compensatory damages to Ramirez.

The court's decision was erroneous, for multiple reasons. First, Ramirez's inability to obtain compensatory damages ultimately traces to the court's refusal to grant Ramirez a jury trial that would have addressed his claim to damages. This was error. Ramirez properly requested a jury trial within fourteen days after removal of the case, as required by Federal Rule of Civil Procedure 81, by making such a request in a pleading served five days after removal. *See* ROA.34. Even if Ramirez's initial jury request was not sufficient, his subsequent Rule 39(b) motion for a jury trial should have secured his Seventh Amendment right to a jury trial because there was no compelling reason to deny the

13

motion and no prejudice to the court or parties arising from a grant of the motion. *Daniel Int'l Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061, 1064 (5th Cir. 1990) (reversing a denial of a Rule 39(b) motion for a jury trial); *Swofford v. B & W, Inc.*, 336 F.2d 406, 409 (5th Cir. 1964) (A court "should grant" a motion for a jury trial "in the absence of strong and compelling reasons to the contrary."); *Lewis v. Thigpen*, 767 F.2d 252, 259 (5th Cir. 1985) ("The right to trial by jury 'is a basic and fundamental feature of our system.'") (quoting *Swofford*, 336 F.2d at 409).

Second, even if the court's denial of a jury trial was proper, it still erred in denying compensatory damages to Ramirez based on the application of incorrect legal standards. Specifically, the court erred in holding that Fifth Amendment takings principles bar Ramirez's claim for compensatory damages for destruction of his house without basic due process. Unlike in the Fifth Amendment takings context, a property owner establishing a *due process* violation may obtain compensatory damages for the destruction of an alleged nuisance property. *Kinnison v. City of San Antonio*, 480 Fed. App'x 271, 276-80 (5th Cir. 2012) (allowing a claim seeking damages for demolition of an alleged nuisance property without due process to go forward); *Ellis v. City of Montgomery*, 460 F.

Supp. 2d 1301, 1313-14 (M.D. Ala. 2006) (awarding "compensatory damages of $11,790" plus interest, for demolition of a fire-damaged home without proper notice, based on the difference in property value before and after demolition).

Additionally, the district court erred in denying Ramirez compensatory damages for the loss of the valuable material in the house based on a Fourth Amendment "privacy interest" test that has no bearing on a due process-based damages claim. To claim damages from a deprivation of property without due process, Ramirez simply needed a valid property interest. There is no dispute that he has a personal property interest in the $15,000 worth of equipment and material stored in the house before it was demolished without due process. ROA.1920-ROA.1922. Indeed, the district court's unappealed ruling that the City deprived Ramirez of property without due process includes the predicate conclusion that he asserted property interests protected under the Due Process Clause. That is all that is needed to give rise to a claim for damages for the loss of the property.

Lastly, the court erred in concluding that Ramirez was not a "prevailing party" entitled to attorneys' fees under 42 U.S.C. § 1988.

15

Because the court erred in denying a jury trial on the issue of damages and/or in denying compensatory damages at the bench trial, its conclusion that Ramirez was not a "prevailing party" due to his nominal damages award was also incorrect. Additionally, even if the court's award of nominal damages is correct (it is not), its apparent belief that this strips Ramirez of "prevailing party" status under 42 U.S.C. § 1988 is mistaken as a matter of law. *Grisham*, 837 F.3d at 568.

## ARGUMENT

### I. The Court Erred in Denying Ramirez a Jury Trial That Would Have Included the Issue of Damages

The court's refusal to grant Ramirez a jury trial, including on the issue of damages, was inconsistent with the Seventh Amendment, erroneous, and an abuse of discretion.

#### A. The Federal Rules related to a jury demand

The right to a trial before a jury was considered so important to the constitutional framers that they "embedded" it in the Seventh Amendment to the Constitution, securing it "against the passing demands of expediency or convenience." *Reid v. Covert*, 354 U.S. 1, 10 (1957) (plurality opinion). Since then, "every encroachment upon it has

16

been watched with great jealousy." *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446 (1830).

The Federal Rules of Civil Procedure seek to implement the constitutional right to a jury by allowing a party to request a jury at several different stages of litigation. For instance, Rule 38(b) states, in part, "On any issue triable of right by a jury, a party may demand a jury trial by: (1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served . . . ."

Rule 81(c)(3)(B), which deals with removed actions like this one, states, in part:

> (B) Under Rule 38. If all necessary pleadings have been served at the time of removal, a party entitled to a jury trial under Rule 38 must be given one if the party serves a demand within 14 days after: (i) it files a notice of removal; or (ii) it is served with a notice of removal filed by another party.

Finally, "[a] party may be relieved of the Rule 38(b) requirement upon motion and at the discretion of the court pursuant to Fed.R.Civ.P. 39(b)." *Richardson v. Henry*, 902 F.2d 414, 416 (5th Cir.), *cert. denied*, 498 U.S. 901 (1990). Rule 39(b) states:

> Issues on which a jury trial is not properly demanded are to be tried by the court. But the court may, on motion, order a

17

jury trial on any issue for which a jury might have been demanded.

### B.    Ramirez properly made a demand for a jury trial within 14 days of removal

The district court concluded that Ramirez was not entitled to a jury because he failed to make a jury demand in compliance with the Federal Rules of Civil Procedure. The court erred.

In considering whether a court properly denied a jury trial, the first issue is whether the requesting party had a Seventh Amendment right to a jury in the first place. *See* Fed. R. Civ. P. 38(b) (allowing a jury demand "on any issue for which a jury might have been demanded"). Generally speaking, actions at law give rise to a right to a jury trial, and whether an action is legal turns heavily on the type of remedy being sought. *SEC v. Jarkesy*, 603 U.S. 109, 123 (2024) (the remedy is the "more important" consideration in determining whether an action is legal). Money damages are a "prototypical common law remedy," a claim for which typically indicates that the underlying action is legal in character. *See id.* (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)). More particularly, "actual and punitive damages" for wrongful conduct is a "traditional form of relief offered in the courts of law." *Curtis v. Loether*,

415 U.S. 189, 196 (1974). Thus, a claim for damages is a proper subject for a jury. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998).

Here, Ramirez's complaint seeks the legal remedy of damages under 42 U.S.C. § 1983 for the destruction of his property without due process. This claim is within the ambit of the Seventh Amendment and confers a right to a jury trial. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) ("We hold that a § 1983 suit seeking legal relief is an action at law within the meaning of the Seventh Amendment.").

Nevertheless, the district court concluded that Ramirez failed to properly demand a jury. Not so. Ramirez filed and served a document requesting a jury trial five days after removal of this case to the federal court. Ramirez specifically filed a Certificate of Interested Parties that contained a caption stating, in all capital letters, "JURY REQUESTED." ROA.34. This request qualifies as a jury "demand" for purposes of Federal Rule of Civil Procedure Rule 81(c)(3)(B), and because it was served "within 14 days" after the notice of removal, it satisfies the requirements of Rule 81(c)(3)(B).

19

The City may argue that Ramirez's initial request for a jury five days after removal was not made on the right kind of form. But the federal rules do not require a jury demand to be written a particular way, and any inclination to strictly critique the style or manner of Ramirez's request must be tempered by the recognition that a constitutional right is at issue. The Seventh Amendment right to a jury does not turn on matters of grammar, terminology, or pleading form. *Jarkesy*, 603 U.S. at 121 (The right to trial by jury is "of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right" has always been and "should be scrutinized with the utmost care." (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486, (1935))). While Ramirez's initial request for a jury was included on a "Certificate of Interest" document, that request was obvious and clear, and since it was served within fourteen days after case removal, it was sufficient to preserve his right.

**C.   If Ramirez did not properly demand a jury trial after removal, the court erred in denying his Rule 39(b) motion for such a trial**

Even if Ramirez failed to properly demand a jury trial after the City removed the case to federal court, the court erred in denying his

20

subsequent motion for a jury trial under Rule 39(b). ROA.1625. The denial of a motion under Rule 39(b) is reviewed under a demanding abuse of discretion standard. *Daniel Int'l Corp.*, 916 F.2d at 1064 ("[W]hen the discretion of the court is invoked under Rule 39(b), the court should grant a jury trial in the absence of strong and compelling reasons to the contrary." (quoting *Swofford*, 336 F.2d at 409)). A motion for trial by jury "should be favorably received unless there are persuasive reasons to deny it." *United States v. Unum, Inc.*, 658 F.2d 300, 303 (5th Cir. 1981).

The district court did not give a reason for refusing to grant Ramirez's motion for a jury under Rule 39(b). This itself is error. *White v. Goodyear Tire*, Nos. 95-20417, 95-20754, 1996 WL 512054, at *6 (5th Cir. Aug. 26, 1996) ("[I]f there are any strong and compelling reasons to deny [the] Rule 39(b) motion, the district court must specifically state those reasons on remand.").

In any case, no good reasons for denying Ramirez's Rule 39(b) motion exist. This Court has held that the following considerations inform review of a denial of a Rule 39(b) motion: (1) whether the case involves issues best tried to a jury; (2) whether granting the motion would disrupt the court's schedule or that of an adverse party; (3) the degree of

prejudice to the adverse party; (4) the length of the delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial. *Daniel Int'l Corp.*, 916 F.2d at 1064 (citations omitted).

Here, the two main issues subject to trial—whether Ramirez's property was actually a nuisance and whether he was entitled to damages—are quintessential jury issues. *Vulcan Materials Co. v. City of Tehuacana*, 369 F.3d 882, 895 (5th Cir. 2004) ("[I]t is for the jury to determine whether a particular thing, act, omission, or use of property . . . is a nuisance in fact.") (citations omitted); *Adams v. Ford Motor Credit Co.*, 556 F.2d 737, 740 (5th Cir. 1977) ("The right of a plaintiff to have this fact issue [of damages] decided by a jury devolves from the Seventh Amendment to the Constitution[.]").

Second, there is no evidence that granting Ramirez a jury trial on these issues would have disrupted the parties' or court's schedule. Months before trial, the court itself anticipated and scheduled a jury trial, notifying the parties of a jury trial date by a docket order. ROA.1568. Third, granting a jury trial would have not have surprised or prejudiced the City. It was put on notice of the likelihood of a jury trial

22

long before the actual trial date by Ramirez's multiple jury requests during the year proceeding the trial, ROA.1560, and by the court's setting of a jury trial date. ROA.1568. Fourth, there was no delay, much less significant delay, in Ramirez's requests for a jury trial. He requested a jury trial five days after removal, ROA.34. He repeated the request approximately two months later with a summary judgment motion served more than a year before trial. ROA.45. Finally, Ramirez did not demand a jury when filing his Petition in state court because Texas law does not require a jury demand at that time. After serving a document with a jury request five days after removal, ROA.34, Ramirez did not assert a second jury demand within 14 days after removal because he (correctly) believed that his initial request for a jury, ROA.34, was sufficient to preserve his Seventh Amendment rights.

For all these reasons, the district court abused its discretion in denying Ramirez's motion for a jury trial. *See Pinemont Bank v. Belk*, 722 F.2d 232, 236 (5th Cir. 1984) (holding that denial of defendant's Rule 39(b) motion was erroneous where the plaintiff's complaint appeared to request a jury trial, and the court initially calendared a jury trial, leading Defendant to believe no demand was needed); *Swofford,* 336 F.2d at 409

(a court "should grant" a motion for a jury trial unless there are "strong and compelling reasons" not to do so). The Court should accordingly vacate the district court's judgment and remand the case for a jury trial on the issues erroneously tried at a bench trial, including the issues of damages.

## II. The District Court Erred in Denying Compensatory Damages

Even setting aside the jury trial error, the court erred in denying Ramirez compensatory damages for the destruction of his home and the property inside without due process. Errors of law in the determination of damages are reviewed de novo. *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 620 (5th Cir. 1996). As the following shows, the district court's denial of compensatory damages was erroneously premised on the application of Fifth Amendment and Fourth Amendment principles that do not apply to Ramirez's procedural due process claim.[1]

---

[1] Even if it reverses the judgment based on the wrongful denial of a jury trial, this Court should address the district court's errors of law on the right to compensatory damages for a due process violation to ensure the jury receives proper instructions on remand.

24

**A.    The "nuisance" exception to takings liability does not apply to procedural due process claims**

At the bench trial, Ramirez presented testimony that the house destroyed without due process was worth just over $167,000 at the time of its demolition. ROA.2088. The City did not offer any contrary, rebuttal evidence on the value of the home. ROA.1919 ("The city did not contest Ramirez's valuations[.]").

Nevertheless, in its post-bench trial decision, the court denied Ramirez compensatory damages for the lost value of the house on the ground that (1) "[f]ederal jurisprudence recognizes a nuisance exception to takings claims," ROA.1920 (quoting *Rhone v. City of Tex. City*, No. 3:21-CV-74, 2022 WL 3453351, at *4 (S.D. Tex. July 18, 2022) (Galv. Div.), *aff'd*, 111 F.4th 680 (5th Cir. 2024)), and (2) "[b]ecause the court has already found that Ramirez's property presented a public nuisance, Ramirez is not entitled to just compensation *under the Fifth Amendment*." ROA.1921 (emphasis added). The court did not separately address whether Ramirez was entitled to damages under the Due Process Clause, apparently concluding that the Takings Clause nuisance exception also barred Ramirez's due process-based claim for damages. In so holding, the court erred as a matter of law. *See Heidorf v. Town of*

25

*Northumberland*, 985 F. Supp. 250, 256 (N.D.N.Y. 1997) (rejecting the government's argument that "because the Church had become a danger and a nuisance, plaintiff had no protected property interest at the time of the demolition," and holding *Lucas* inapplicable because it "did not deal with property *interests* under the Fourteenth Amendment").

In *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1029-31 (1992), the Supreme Court held that the government can avoid liability for an unconstitutional and compensable taking of property under the Fifth Amendment if it proves that its actions against property simply implement traditional "background principles" of nuisance and property law that already limit ownership. In many cases, the upshot of this principle is that the government does not effect an unconstitutional, compensable taking when it acts against properties lawfully determined to be a nuisance.

But neither the Supreme Court nor this Court has ever applied the Fifth Amendment "background principles" nuisance exception to a procedural due process claim, for good reason. Takings and due process guarantees redress different kinds of injuries, and protect different property interests. *Hignell-Stark v. City of New Orleans*, 46 F.4th 317,

324 (5th Cir. 2022) ("A property interest for purposes of procedural due process does not automatically qualify as a property interest protected by the Takings Clause.").

Generally speaking, the injury addressed by a takings claim is the appropriation of private property, whether by regulation, invasion, occupation, or destruction. By contrast, the compensable injury in a due process claim is not the loss of property itself; it is the government's failure to provide the owner with pre-deprivation notice and/or opportunity to be heard that would have allowed the owner to potentially avoid the deprivation. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 222 (5th Cir. 2012). Put differently, the Due Process Clause seeks to protect an owner from being injured by the government's failure to provide the owner with a fair chance to defend its property interests *prior* to destruction. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993); *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (Due process supposes that by considering a person's defenses ex ante, "substantively unfair and simply mistaken deprivations of property interests can be prevented." (quoting *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972))); *Carey v. Piphus*, 435 U.S. 247, 259 (1978)

27

("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.").

A successful due process claim accordingly compensates the property owner for the loss of a pre-deprivation opportunity to defend their property and its consequences, not strictly speaking for, the property itself. *Bowlby*, 681 F.3d at 222 ("[T]he injury that stems from a denial of due process is not the liberty or property that was taken from the plaintiff, but the fact that it was taken without sufficient process.").

Perhaps out of respect for the importance of the right to receive basic due process (notice and a hearing) before the government acts, the Due Process Clause protects a broader array of property interests than the Takings Clause. Regardless of the reason, the essential point is that the Due Process Clause applies to and protects more property interests than the Takings Clause. *Hignell-Stark*, 46 F.4th at 324-25.

Given these distinctions, it is unsurprising that courts have refused to apply the *Lucas* nuisance-property exception to takings liability to procedural due process claims. While one may not be able to claim a compensable taking from the loss of an alleged nuisance property after

28

the owner is provided with full pre-deprivation due process (notice and hearing), it does not follow that the owner cannot claim damages when the same property is destroyed *without* such process. *Archbold-Garrett*, 893 F.3d at 322 ("A procedural due process violation is actionable and compensable without regard to any other injury."); *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) "(If the government fails to comply with the dictates of the Due Process Clause, the aggrieved party can seek compensatory damages . . . under 42 U.S.C. § 1983."). After all, in the second scenario, the owner did not just lose the property, he lost the opportunity to stop the taking before it occurred. *Bowlby*, 681 F.3d at 222-23.

The same conclusion applies when one views the issue through the lens of protected property interests. While a nuisance may not qualify as protected "property" for purposes of the Takings Clause, *Lucas*, 505 U.S. at 1029-31, it has that status under the Due Process Clause's broader umbrella. *Price v. City of Junction*, 711 F.2d 582, 589 (5th Cir. 1983) (holding that owners of junked cars classified as a public nuisance "clearly have a property interest within the contemplation of the due process clause"); *McIntosh v. City of Madisonville*, 126 F.4th 1141, 1146-

29

48 (6th Cir. 2025) (Murphy, J., concurring) (concluding that "there can be no doubt" that the a home that was demolished as a nuisance "fell with the traditional definition of 'property'" protected by the Due Process Clause).

In short, because the Due Process Clause recognizes nuisance property as a protected "property" interest, and seeks to compensate for the lack of pre-deprivation notice, and its consequences, not just for the property itself, classification of Ramirez's house as a nuisance does not bar his claim for damages under 42 U.S.C. § 1983. *McIntosh*, 126 F.4th at 1146-48 (denying a city's motion for summary judgment on a Section 1983 claim seeking damages for demolishing a nuisance home without an opportunity to be heard); *see also, Heidorf*, 985 F. Supp. at 256. At the bench trial in this case, Ramirez specifically sought damages for the destruction of his house in violation of his Fourteenth Amendment due process rights. ROA.1875 (Plaintiff's Proposed Findings of Fact and Conclusions of Law). The district court erred in denying Ramirez compensatory damages for the loss in property value arising from the due process violation based on inapposite Takings Clause principles. *Ellis*,

460 F. Supp. 2d at 1313-14 (awarding compensatory damages for demolition of a fire-damaged home without proper notice).

**B.     The court erred in concluding that a Fourth Amendment "privacy interest" test bars Ramirez's claim for damages for the loss of personal property**

The district court also erred in denying Ramirez compensatory damages for the destruction of personal property in the house based on a Fourth Amendment "privacy interest" test that has no place in procedural due process litigation.

The Supreme Court has held that, in some cases, the Fourth Amendment's protections may apply outside of private property areas, *Katz v. United States*, 389 U.S. 347, 350-54 (1967), if the plaintiff has a legitimate expectation of "privacy" in the subject area. *Id.*; *New Jersey v. T.L.O.*, 469 U.S. 325, 338 (1985).

But neither this Supreme Court nor this Court has ever extended the Fourth Amendment "privacy interest" criteria to the procedural due process context. Nor has any other circuit court taken such a step. There is a simple reason for this limitation: the Due Process Clause explicitly protects against deprivations of "property." Thus, federal courts, including this one, simply require one asserting a "deprivation of

31

property without due process" claim to rest the claim on a recognized property interest, not a privacy interest. *Fuentes v. Shevin*, 407 U.S. at 81, 84; *Hampton Co. Nat'l Sur., LLC v. Tunica County*, 543 F.3d 221, 224 (5th Cir. 2008) ("Procedural Due Process 'imposes constraints on governmental decisions that deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976))).

Not surprisingly, in its ruling rejecting Ramirez's claim for compensatory damages for the destruction of the items in the house, the district court cited no due process precedent in support of its belief that Ramirez must show a "privacy interest" to obtain such damages. It is true that the district court pointed to *Freeman v. City of Dallas*, 242 F.3d 642, 652 (5th Cir. 2001) (en banc). Yet, while *Freeman* held that a property owner lacked legitimate privacy expectations in a particular nuisance property, it did so only in the context of a Fourth Amendment "unreasonable seizure" claim, *id.* at 644, 654. The en banc Freeman court was careful to limit its discussion of the "privacy interest" test to the Fourth Amendment context. *Id.* at 652-53 ("[T]he Fourth Amendment

32

protects only those expectations of privacy that society recognizes as 'legitimate.'" (citing *T.L.O.*, 469 U.S. at 338)). Indeed, in a portion of the panel decision in Freeman which dealt with a due process claim and which was not subject to en banc review, this Court did not require the *Freeman* plaintiffs to assert valid "privacy" interest to raise their procedural due process claim, *Freeman v. City of Dallas*, 186 F.3d 601, 606-08 (5th Cir. 1999).

A property owner seeking damages for a deprivation of property in violation of the Due Process Clause need only assert a protected "property" interest. In this case, the City has never disputed that Ramirez has a protected property interest in the appliances and equipment in his house when it was demolished without due process. In fact, the district court correctly recognized that this material was "personal property," ROA.1920-ROA.1922, and its conclusion that Ramirez was deprived of property without due process necessarily incorporated the conclusion that he asserted protected property interests. *See generally, Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 823 (5th Cir. 2007) ("[T]he Supreme Court has recognized that the due process clause protects a person's property interests in personal property

such as real estate, chattels, and money."). That was sufficient for Ramirez to claim compensatory damages. *Propert v. District of Columbia*, 948 F.2d 1327, 1336 (D.C. Cir. 1991) (remanding a due process claim "for a determination of damages" after holding that the government had taken a "junk" car without due process).

The district court's conclusion that Ramirez could not obtain compensatory damages for the destroyed material was error. *See Archer v. Gipson*, 108 F. Supp. 3d 895, 912-16 (E.D. Cal. 2015) (allowing a jury trial on a claim for compensatory damages for the abatement of construction material on private property without due process); and *Archer v. Gipson*, No. 1:12-CV-00261, 2015 WL 9473409, at *1 (E.D. Cal. Dec. 28, 2015) (subsequent decision recognizing that "[t]he jury awarded compensatory damages to Plaintiffs of $937.36").

## III. The District Court Erred in Holding That Ramirez Is Not a "Prevailing Party" for Purposes of Attorneys' Fees

In its final ruling, the district court rejected Ramirez's argument that he was a "prevailing party" entitled to attorneys' fees under 42 U.S.C. § 1988 because he had established a due process violation. The court held that Ramirez is not a "prevailing party" under Section 1988, because he had only secured nominal damages.

34

The court erred, because the critical premise for the court's denial of fees, that Ramirez could only obtain nominal damages, is itself faulty. As explained above, the court's limitation of Ramirez's right to relief to nominal damages flows from the court's mistaken failure to grant a jury trial and/or its use of incorrect legal standards to deny compensatory damages. Since the basis for the court's rejection of Ramirez's claim to attorney fees' (i.e., its refusal to find compensatory damages) is erroneous, its resulting denial of attorneys' fees is also erroneous and an abuse of discretion. *See, e.g., Shelton v. Louisiana*, 919 F.3d 325 (5th Cir. 2019). Moreover, even assuming an award of only nominal damages was proper (it was not), the court erred in holding that this limitation of damages barred Ramirez from qualifying as a "prevailing party" for purposes of attorneys' fees. *Grisham*, 837 F.3d at 568.

## CONCLUSION

The Court should reverse and remand for further proceedings consistent with its opinion.

DATED: October 29, 2025.

Respectfully submitted,

J. DAVID BREEMER
SAVANNAH LINA ROBINSON

s/ J. David Breemer
J. DAVID BREEMER
*Attorneys for Plaintiff – Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ J. David Breemer
J. DAVID BREEMER

37

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This document complies with Federal Rule of Appellate Procedure 27(d)(2)(a) because this brief contains 6,998 words, excluding items enumerated in Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2. I relied on my word processor, Microsoft Word, to obtain the count.

2.      This document complies with Federal Rule of Appellate Procedure 32(a)(5)-(6). It is printed in 14-point Century Schoolbook, a proportionately spaced font.

/s/ J. David Breemer
J. DAVID BREEMER